Judge Cabell,
delivered the opinion of the Court.
The President, Directors and Company of the Bank of Marietta, incorporated by a law of the State of Ohio, brought actions of debt, in the Superior Court of Law for the county of Harrison, against M’Cally, against Pin dall, and against Wilson, severally, on promissory notes executed to third persons, made payable at the Bank of Marietta, and assigned to the plaintiffs. The defendants demurred, generally, to the declarations, and the plaintiffs joined in the demurrers. The defendants, also, put in special pleas, stating, in substance, that the notes were made and signed by them, and endorsed by the payees, within this Commonwealth, yiz: at the county of Harrison, and not elsewhere; and that the plaintiffs were not a corporate body by any law of this State. To these pleas, the plaintiffs demurred generally, and the defendants joined in the demurrers.
On these pleadings, two questions have been made:
1. Whether a Banking Company, not incorporated as such by any law of Virginia, hut by a law of one of our sister States, can prosecute an action in Virginia, in its corporal c name and character, on any contract whatever?
2. Whether they can prosecute an action in our Courts on a contract made in Virginia?
1. As to the first question:
It is a principle of universal justice, that the rights and obligations of contracts, valid at the place and time of their inception, do not depend on the residence of the contracting parties. They follow and attend the parties *472 wherever they may be, or wherever they may go. This is a principle of universal convenience, as well as of jus* tice; and it is recognized as such by all civilized nations. . jjence jSj that they lend the aid of their civil tribunals t0 enforce contracts made in foreign countries, even where the contracts were intended to have been executed in the country where made, and although one or both of the contracting parties may owe no allegiance to the country where the suit may be brought. In exercising this power, the contracts are expounded according to the laws of the place where made: and thus it is, that the Courts of one country take cognizance of, and execute the laws of another country. The only limitation to this comity of nations is, that each will refuse to execute contracts which are contrary to the policy of their own laws.
These principles, (believed to be incontrovertible,) applied to the cases now before us, must be decisive of the first question.
The appellees, themselves, would not deny the right of the appellants to enforce these very contracts, if they were natural and not artificial persons, of the State of Ohio. But, the appellants, as artificial persons in Ohio, had, according to the laws of that State, the same capacity to contract and acquire rights, in their corporate name and character, as if they had been natural persons. Rights acquired, in that name and character, are not less protected by the laws of Ohio, nor less sanctioned by eternal justice, than rights acquired by natural persons. In executing contracts made abroad, our Courts are, in. many instances, required by justice, and allowed by the comity of nations, to look beyond our own laws, and to regulate their decisions, as to the obligation of contracts in relation to their subject matter, by the laws of other countries. Thus, although, according to our own laws, a man is not allowed to reserve on a contract for the loan or forbearance of money, a greater rate of interest than six per centum per annum, yet, if a contract, reserving a greater rate of iiite *473 zest than 6 per cent., bo made in a country whose laws authorise such greater rate, our Courts would not hesitate to enforce its strict execution. If the obligation of contracts, as to their subject, matter, is thus to be decided and enforced in our Courts, by reference to the laws of the, country where made, justice, and the comity of nations, equally require that their obligation, in relation to the contracting parties, should depend on the same laws, and he enforced by our Courts accordingly. It is impossible to imagine a difference between the two cases.
On principle, therefore, there seems to bo nothing in the objection, that the appellants, suing as a corporate body, do not owe their existence, as such, to the laws of this Commonwealth. Nor is it supported by any authority, in England, or in this country. It is, indeed, remarkable that hut one case has heeii found of a suit, in the English Courts, by a foreign corporation. The Dutch East India Company v. Van Moses, 1 Str. 612; and a branch of the same case, Henriquez v. The Dutch East India Company, reported in .2 Sir. 807, and in 2 Ld. Raym. 1532. It seems to be somewhat a matter of contest between the counsel, in the cases before us, whether the objection now under consideration was actually made and decided in the English case above referred to. As the point seems to us so clear, on principle, as not to need the support of authority, we do not deem it necessary to determine, with precision, how far it was actually made and decided in that case. The action of the plaintiffs, in that case, was certainty liable to the objection; and whether it was actually made, or not, the action prevailed. The objection has been raised in the Courts of New York, and of Massachusetts, and has been disregarded.
Every argument in favor of entertaining, in our Courts, suits by corporations created by the laws of a country not forming part of the American confederacy, applies with double force to corporations of our sister States. It is rendered doubly necessary by the intimacy of our political *474 union, and by the freedom and frequency of our commercja] intercourse.
Nor is there any thing in the nature of this corporation, or 0f tqe contract on which they sue, contrary to the policy of our laws. We claim no right to interfere in the municipal regulations of foreign nations, or of our sister States. We claim no power to create corpox-ations for carrying on Banking operations beyond our own limits. But, it is our policy to prevent other nations and States, and the corporations of other nations and States, from doing that towards us, which we forbear to do towards them. It is oar policy to restrain all Banking operations by corporations not established by our own laws. It would not, therefore, be permitted to a Bank in Ohio, to establish an agency in this State, for discounting notes, or for carrying on any other Banking operations; nor could they sustain an actioix on any note thus acquired by them. But, there is nothing in the policy of our laws, which restrains our citizens from promoting their accommodation and interest by borrowing money from a Bank in Ohio. It is not the policy of our laws to restrain one citizen of Virginia from executing to another citizen, or to a foreigner, a note payable at Ihe Banking-house of a Bank legally constituted in Ohio; xmr to px-event such Bank from taking an assignment of such note by discounting it in Ohio. We can have no doubt, but that the Bank may recover by suit in Vix’ginia, a debt thus contracted.
It was earnestly, and with great appearance of reason, contended by the counsel for the appellants, that, as incidental to the right of recovering, in Virginia, a debt acquired by an original and legal- contract in Ohio, they might legally make, in Virginia, a secondai'y contract for carrying into effect a contract originally and legally mide in Ohio; as, for instance, that they might take from a debtor, in Virginia, the assignment of a note or other chose in action, in payment of a debt originally and legally contracted in Ohio. But, as this point does not necessarily *475 present itself in these cases, we forbear to express any opinion upon it.
So far, then, as relates to the first and general question, viz: the right of the appellants to sue as a corporation, we think the demurrers to Ihe declarations should have been over-ruled, and the demurrers to the pleas should have been sustained.
2d. As to the second question: have the appellants a right to prosecute actions in our Courts, on contracts made in Virginia ?
We have already stated, that no foreign Bank could make a primary contract in Virginia, by discounting notes, or otherwise. No right of action, therefore, could arise from the exercise of such a power.
But, do the pleadings in these cases shew that the contracts of assignment, by which the appellants claim, were made in Virginia ?
Let us first examine the special pleas of the defendants. We do not think that they alledge, or intended to alledge, that the assignment was made in Virginia. The deelation in the case against Md Catty avers, that the payee of the note et endorsed and assigned the same by his writing on the back thereof, to the plaintiffs;” and the declarations in each of the other two cases, aver, that the payee, by his endorsement on the said note, assigned it to the plaintiffs, but all the declarations are silent as to the place where the assignment was made. IIow are these averments in the declarations met by the pleas? Not by the allegation that the notes were assigned to the plaintiffs in Virginia; nor even by Ihe allegation that they were endorsed to the plaintiff's in Virginia; but simply, that they were endorsed in Virginia. The term endorse, when applied to hills of exchange, negotiable by the custom of merchants, or to papers made negotiable by our statutes, may, ex vi termini, import a legal transfer of the title. But, as to bonds and notes, not negotiable, the legal title to them passes by assignment only; and as to them, endorsement is *476 not equivalent to assignment. As to them, assignment means more than endorsement; it means endorsement ay one party, with intent to assign, and an acceptance of that assignment, by the other party. The notes in question are not negotiable, according to our laws, but assignable only. The pleas, therefore, that they were endorsed in Virginia, tendered immaterial issues, and.were propelly demurred to. It may have been the intention of the pleader to entrap the plaintiffs, if they took issue, by confining the proof to the mere fact of the payees writing their names on the backs of the notes; and this is rendered probable, by the circumstance that the notes are not alledgad by the pleas to have been endorsed to the plaintijfs. They might well be endorsed in Virginia, and assign ed in Ohio. The question, therefore, whether the appellants could sue, in our Courts, on a contract made in Virginia, is not presented by the pleas,
Let us next examine the declarations and the general demurrers thereto. The declarations, in all the cases, alledge that the notes were assigned by the payees to the plaintiffs; but do not state where the assignments wore made. The effect of the demurrers is to admit the assignments, as laid in the declaration. If these assignments were made in Ohio, they were lawful, and will serve as the foundation for suits in our Courts; if they were made in Virginia, as original, contracts, they were null and void, and can give no right of action. In the total absence of all allegations by either plaintiffs or defendants, as to the place where the assignments were made, we do not fiel ourselves constrained i-. intend that they were made at a place where the parties nad no right to make them, and where the attempt to make them would be vain and nugatory. On the contrary, we think, that on these pleadings, the assignments must be taken to have been made at the Bank of Marietta, where the notes were originally made payable, and where the appellants had a right to discount them. If the assignments had been actually made *477 in Virginia, and the defendants had wished to avail themselves of that fact as a defence, there were two courses by which they might have accomplished that object. They might have pleaded the fact specially, in which case the plaintiffs would have been bound to take issue, or to mur; or they might have demurred specially to the declaration, assigning for cause, that the plaintiffs had not laid the assignments at a place where they could lawfully receive them. This objection, as to matter of form, might have been fatal on a special demurrer. Bid, we think it is too late to take advantage of it, after a general demurrer. It is certain, that the defendants could not avail themselves of it, for reversing the judgment, after verdict; and for this, we refer to the case, of Buster v. Ruffner, 5 Munf. 27, in which the venue was laid in a county different from that in which the suit was brought.
The judgments must be reversed; the demurrer to the declarations over-ruled; the demurrers to the pleas sustained; and judgments entered for the plaintiffs for principal and interest, according to the notes, and for the costs, &e„